the Incremental Facility and in favor of MLCC as administrative agent for the Bridge

Facility (together, the "Step Two Notes").

109.  At the same time, the Guarantors executed a separate guarantee of the $1.6

billion Bridge Facility (the "Step Two Guarantee"), subordinate to the Step One

Guarantee, by which the Guarantors jointly and severally unconditionally guaranteed

repayment of the Bridge Facility.  Through the execution of the Step Two Guarantee, the

Guarantors increased their obligation to $11.733 billion.  As with the Step One

Guarantee, the Company effectively transferred the value of the Company's equity

interest in the Guarantors to the LBO Lenders by means of the Step Two Guarantee (the

"Step Two Equity Value Transfers," taken together with the Step One Equity Value

Transfers, the "Equity Value Transfers"), by putting the rights of the LBO Lenders as

creditors of the Guarantors ahead of the Company's rights as shareholder of the

Guarantors.  The amount of indebtedness guaranteed by the Step One and Step Two

Guarantees far exceeded the net worth as of December 20, 2007, of the Company and of

each individual Guarantor and of all Guarantors collectively.

110.  Furthermore, in connection with and at the same time as the Guarantors

executed the Step Two Guarantee, the Guarantors executed two Indemnity, Subrogation

and Contribution Agreements (the "Subordination Agreements"), one for Step One and

one for Step Two.  The Subordination Agreement respecting the Step One Financing was

executed by the Guarantors six months after the Step One Financing transaction as an

attachment to the Increased Joinders executed by certain lenders and the Company for the

funding of the Incremental Facility.  It had the effect of subordinating indemnity,

subrogation and/or contribution claims from a Guarantor and the Company or between or

among Guarantors to the claims of the Step One Lenders.  The Subordination Agreement respecting the Step Two Financing was executed by the Guarantors at the time of the Step Two Financing and subordinated to the Bridge Facility all of the Guarantors' rights to assert indemnity, subrogation and/or contribution claims such Guarantors then had or thereafter acquired against the Company or other Guarantors.  The effect of the Subordination Agreements was to divert additional value in the Guarantors away from the Non-Bank Lenders in the event of non-payment by the Company of the debt incurred in the Step One or Step Two Financings and thereby to reduce the equity value of the Guarantors available to the Company or to its Non-Bank Lenders.

111.  Thus, in connection with the Step Two Financing, the Company and the Guarantors became liable for the additional sum of approximately $3.7 billion, which was used entirely, along with prior borrowings, to complete the conversion of the remaining 117,115,055 shares of stock to a right to receive $34 per share, for a total of $3,981,911,860.

112.  The Guarantors did not receive anything in exchange for the Step Two Guarantee.

113.  In conjunction with the closings of the Step One and Step Two Financings (together, the "LBO Financing") and the tender offer, over $200 million in fees and reimbursement of expenses was paid to the Lead Banks and certain others (the "LBO Fees").  Those defendants who received the LBO Fees are referred to herein as the "LBO Fee Defendants" and are identified in Exhibit E hereto.  The Lead Banks were motivated to make the LBO Loans by the prospect of earning these substantial fees and because

38

they intended to substantially limit their exposure on the underlying credit by syndicating and selling the majority of the LBO Debt to third-party financial institutions.

## PRE-BANKRUPTCY PAYMENTS TO LBO LENDER DISGORGEMENT DEFENDANTS

114.  After completion of the Step One Financing and prior to the filing of Chapter 11 proceedings in the bankruptcy court on December 8, 2008, the Company paid to JPMCB, as administrative agent for the Senior Credit Facility, and MLCC, as administrative agent for the Bridge Facility, a total of approximately $1.98 billion in LBO Repayments, consisting of over $900 million of interest and over $1.078 billion of principal.  Of the total LBO Repayments, approximately $1.73 billion applied to the Step One Financing (the "Step One Repayments"); approximately $143.4 million applied to the Incremental Facility (the "Incremental Repayments"); and over $114.5 million applied to the Bridge Financing ("Bridge Repayments," and together with the Incremental Repayments, the "Step Two Repayments").  JPMCB, as administrative agent for the Senior Credit Facility, and MLCC, as administrative agent for the Bridge Facility, distributed the LBO Repayments to the LBO Lender Disgorgement Defendants prior to the Petition Date.

115.  Of these LBO Repayments, the Company paid  approximately $175 million within the 90 days preceding the Petition Date.  A list of the Company's repayments during the 90 days preceding the Petition Date is set forth on Exhibit F hereto.

## BANKRUPTCY PETITION FILING

116.  The Company's financial performance after the LBO closed was consistently far below the Company's February 2007 projections.  The bankruptcy that the Lead Banks had contemplated before the Step One Financing became inevitable as

2800755.10
2805086.2

the Company struggled under the weight of the enormous debt it had taken on to buy out the shareholders and pay off the 2006 Bank Debt.  By late 2008, the Company had begun active planning for a bankruptcy filing.  Unsurprisingly, given the financing structure designed to impose the first losses on the Non-Bank Debt, it was an impending payment due on the Bond Debt that immediately precipitated the filing.

117.  The Bond Debt included a series of bonds issued in 1997 which was due to mature on December 8, 2008, when the Company would be obligated to make a principal payment of $69,500,000.  Recognizing that a payment of that magnitude would affect the funds available for repayment of the LBO Debt, Zell approached JPM and others – including two of the Company's advisors and one of Zell's – and the Board and recommended the initiation of these bankruptcy proceedings to avoid having to make the $69,500,000 payment to the holders of the Bond Debt.  Upon approval of the Board, and after consultation with the LBO Lenders, the Company and 111 of its subsidiaries filed voluntary petitions under Chapter 11 of the Bankruptcy Code on the Petition Date. Subsequently, the Committee was appointed and granted the authority to bring this action.

## THE CLAIMS OF THE AGENTS

118.  JPMCB and MLCC , each on its own behalf and as administrative agents for the Senior Credit Facility and the Bridge Facility, respectively, filed proofs of claim in the bankruptcy case of the Tribune Company based on claims arising under the Senior Credit Facility and the Bridge Facility, respectively (such proofs of claim, together with proofs of claim filed by any other LBO Lenders on account of the LBO Debt, as amended or modified, the "Bank Claims").

2800755.10
2805086.2

119.  JPMCB, on its own behalf and as administrative agent for the Senior Credit Facility, also filed proofs of claim in each of the bankruptcy cases of the Debtors who are obligated on the Step One Guarantee or the Step Two Guarantee (the "Guarantee Claims").  MLCC, as administrative agent for the Bridge Facility, did not file proofs of claim against any of the Debtors other than the Company.

120.  Wells Fargo was later appointed administrative agent for the Bridge Facility.

121.  All other allowed claims against the Company shall be referred to as the "Non-Bank Claims."

## COUNT ONE

**CONSTRUCTIVE FRAUD AGAINST JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE SENIOR LENDER CLASS, THE BRIDGE LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS, AND THE LBO LENDER DISGORGEMENT DEFENDANTS TO AVOID THE LBO OBLIGATIONS, EQUITY VALUE TRANSFERS AND LBO REPAYMENTS AND TO RECOVER THE EQUITY VALUE TRANSFERS AND LBO REPAYMENTS (11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a) and 551)**

122.  Plaintiff incorporates by reference paragraphs 1 – 121 of this Complaint as if set forth again in full.

123.  Pursuant to the Merger Agreement executed on April 1, 2007, the Senior Credit Facility executed on May 17, 2007, and the Bridge Facility executed on December 20, 2007 (collectively, the "LBO Agreements"), the Company executed certain promissory notes in an aggregate amount exceeding $11.7 billion in connection with the financing for the LBO (the "LBO Notes") and made the Pledge.

124.  Pursuant to the LBO Agreements, the Company caused the Guarantors to execute the unconditional Step One Guarantee and Step Two Guarantee, respectively,

41

(together, the "LBO Guarantees") in favor of the LBO Lenders.  By the LBO Guarantees, the Guarantors purported to guarantee jointly and severally the full and complete payment of the obligations incurred by the Company in the LBO Loans.  The LBO Notes, LBO Guarantees, and Pledge are collectively referred to as the "LBO Obligations."  By causing the Guarantors to execute the LBO Guarantees, the Company effected the Equity Value Transfers.

125.  The Company's Pledge of stock in Holdco and Finance was intended, at least in part, to consolidate the priority of the LBO Notes over all other debt of the Company other than the Bond Debt.

126.  Neither the Company (as to the value of the Equity Value Transfers, the obligations incurred under the LBO Notes and the Pledge) nor the Guarantors (as to the obligations incurred under the LBO Guarantees) received reasonably equivalent value in exchange for making the Equity Value Transfers or incurring their respective LBO Obligations, as applicable.  Most of the money advanced in connection with the LBO Loans was applied to purchase outstanding shares of the Company's stock from shareholders pursuant to the tender offer which closed on June 4, 2007 and the merger that closed on December 20, 2007.

127.  At the time each of the LBO Obligations was incurred, and each of the Equity Value Transfers was made, taking into consideration the LBO as a whole, the Company's obligations under the Merger Agreement and otherwise to complete the LBO, reasonable projections of the performance of the Company's businesses and the fair value of its assets and liabilities, the Debtors were insolvent, or became insolvent as a result of

42

incurring such LBO Obligations or making such Equity Value Transfers, within the meaning of 11 U.S.C. § 101(32)(A).

128.  The Debtors were left with unreasonably small capital to operate their businesses as a result of and following the incurrence of the LBO Obligations and the making of the Equity Value Transfers.

129.  At the time of the incurrence of the LBO Obligations and the making of the Equity Value Transfers, the Debtors intended to incur or believed they would incur debts beyond the Debtors' ability to pay as such debts matured.

130.  The LBO Obligations and Equity Value Transfers must therefore be avoided.

131.  The LBO Repayments were paid with respect to the LBO Obligations that must be avoided and at a time when the Debtors were or became insolvent, were left with unreasonably small capital or intended to incur or believed they would incur debts beyond the Debtors' ability to pay as a result of such LBO Repayments.  The LBO Repayments must therefore be avoided and Plaintiff is entitled to recover the LBO Repayments.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants: (i) the LBO Obligations, the Equity Value Transfers and the LBO Repayments must be avoided pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B); (ii) the Bank Claims, to the extent that they arise from the LBO Notes, must be subordinated to the Non-Bank Claims or disallowed; (iii) the Guarantee Claims,

2800755.10
2805086.2

to the extent that they arise from the LBO Guarantees or the Pledge, must be subordinated or disallowed; (iv) the Committee must recover the total amount of the LBO Repayments pursuant to applicable state law and 11 U.S.C. § 550(a) for the benefit of the estate from JPMCB and MLCC, as the initial transferees or as the entities for whose benefit the transfers were made, and from the LBO Lender Disgorgement Defendants, together with interest from the date of each particular LBO Repayment, attorneys' fees and costs of suit and collection allowable by law; (v) the avoided Equity Value Transfers (or their value) must be recovered and preserved for the benefit of the Company's estate pursuant to 11 U.S.C. §§ 550(a) and 551 and (vi) any benefits or proceeds of the avoided obligations, avoided and recovered transfers, disallowed claims and/or any such recovered and preserved value resulting from the foregoing must not be shared with JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt for the reasons given and based on the allegations made in Counts Four and Five, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

2800755.10
2805086.2

## COUNT TWO

### ACTUAL FRAUD AGAINST JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE SENIOR LENDER CLASS, THE BRIDGE LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS, THE LBO LENDER DISGORGEMENT DEFENDANTS, THE LBO FEE DEFENDANTS AND THE 2006 BANK DEBT DEFENDANTS TO AVOID THE LBO OBLIGATIONS, EQUITY VALUE TRANSFERS, 2006 REPAYMENT, LBO REPAYMENTS AND LBO FEES, AND TO RECOVER THE EQUITY VALUE TRANSFERS, 2006 REPAYMENT, LBO REPAYMENTS, AND LBO FEES (11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a) and 551)

132.  Plaintiff incorporates by reference paragraphs 1 – 131 of this Complaint as if set forth again in full.

133.  The Debtors structured the LBO Financing, incurred the LBO Obligations and made the Equity Value Transfers, repaid the 2006 Bank Debt, made the LBO Repayments and paid the LBO Fees, all with actual intent to hinder, delay or defraud the Non-Bank Lenders.  The Debtors, JPM, MLCC, Citigroup, and Bank of America acted with actual knowledge, or willful blindness or recklessness that amount to knowledge, that the LBO would render the Company insolvent, or at a minimum posed a high risk of insolvency, as detailed herein.

134.  The LBO Financing was structured and designed by the Lead Banks and agreed to by the Debtors for the purpose of elevating the 2006 Bank Debt, as replaced by the LBO Notes, and elevating the LBO Debt above the Bond Debt in terms of priority of payment.   This result was achieved primarily through the Guarantees and the Equity Value Transfers, which operated solely for the benefit of the LBO Lenders, imposed obligations far exceeding the net worth of each of the Guarantors and for which the Guarantors received no value.

45

135.  The creation of Holdco and Finance, the circular transactions by which certain Guarantors incurred some $3 billion in intercompany notes to Finance, and the Pledge of Holdco and Finance stock, were also intended, at least in part, to consolidate the priority of the LBO Notes over all other debt of the Company.

136.  The Lead Banks insisted on this structure for the LBO Financing because they knew or acted with willful blindness or recklessness that the LBO would render the Company insolvent or posed a high risk of insolvency and wanted to ensure that their claims would be paid ahead of those of the Non-Bank Lenders in that event.  On information and belief, neither JPMCB nor MLCC gave actual notice to the indenture trustees on behalf of the Bond Debt of the scheme to make the LBO Notes structurally superior to the Bond Debt and other debt of the Company.

137.  In connection with the LBO Financing, the Debtors made a transfer of an interest of the Debtors in property of $2,534,437,415.56 to Citicorp as administrative agent for the 2006 Bank Debt to satisfy that debt in full (the "2006 Repayment").  That transfer was made with actual intent to hinder, impede or defraud the Non-Bank Lenders by converting the 2006 Bank Debt from an obligation that would share *pari passu* with the Non-Bank Lenders to one that would have structural superiority to the Non-Bank Lenders by virtue of the Guarantees.

138.  In connection with the LBO, the Debtors transferred or caused to be transferred an interest of the Debtors in property to the LBO Fee Defendants, or to parties acting on their behalf, consisting of approximately $200 million in LBO Fees.  The transfers of the LBO Fees were made with actual intent to hinder, impede or defraud the Non-Bank Lenders because, at the time those transfers were made, the Debtors, JPM,

46

MLCC, Citigroup, and Bank of America acted with actual knowledge, or willful blindness or recklessness that amounts to knowledge, that the LBO would render the Company insolvent, or at a minimum posed a high risk of insolvency

139.  CGMI and Merrill acted as advisors to the Company with respect to the failed attempted auction in late 2006 and early 2007 and the LBO and, as a result, had access to inside information.

140.  Citicorp, as part of Citigroup, knew or should have known that the Debtors were incurring debt as a result of the LBO beyond the Debtors' means to repay, given the declining newspaper business.

141.  By obtaining the payoff of the 2006 Bank Debt and participating in the LBO Debt, Citigroup was able to increase the interest rate and improve the security with respect to the money it and others had loaned to the Company.

142.  The LBO Repayments were made with respect to the LBO Obligations that must be avoided and at a time when the Debtors were or became insolvent, were left with unreasonably small capital or intended to incur or believed they would incur debts beyond the Debtors' ability to pay as a result of such LBO Repayments.  The LBO Repayments must therefore be avoided and Plaintiff is entitled to recover the LBO Repayments.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants: (i) the LBO Obligations, the Equity Value Transfers, the 2006 Repayment, the LBO Fees, and the LBO Repayments must be avoided pursuant

47

to 11 U.S.C. §§ 544(b) and 548(a)(1)(A); (ii) each of the Bank Claims and Guarantee

Claims must be subordinated or disallowed; (iii) the Committee must recover the total

amount of the 2006 Repayment pursuant to applicable state law and 11 U.S.C. § 550(a)

for the benefit of the estate from Citicorp as administrative agent for the 2006 Bank Debt,

as the initial transferee or as the entity for whose benefit the transfers were made, and

from the 2006 Bank Debt Defendants, together with interest from the date of the 2006

Repayment, attorneys' fees and costs of suit and collection allowable by law; (iv) the

Committee must recover the total amount of the LBO Repayments and LBO Fees

pursuant to applicable law and 11 U.S.C. § 550(a) for the benefit of the estate from

JPMCB and MLCC as the initial transferees or as the entities for whose benefit the

transfers were made, and from the LBO Lender Disgorgement Defendants and the LBO

Fee Defendants, together with interest from the date of each particular transfer, attorneys'

fees and costs of suit and collection allowable by law; (v) the avoided Equity Value

Transfers (or their value) must be recovered and preserved for the benefit of the

Company's estate pursuant to 11 U.S.C. §§ 550(a) and 551; and (vi) any benefits or

proceeds of the avoided obligations, avoided and recovered transfers, disallowed claims

and/or preserved value resulting from the foregoing must not be shared with JPMCB,

MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt for

the reasons given and based on the allegations made in Counts Four and Five, until all of

the Non-Bank Claims against the Company have been paid in full and, consequently, as

to each Debtor, any value that results from such avoidance, disallowance and/or recovery

must be paid or distributed to the holders of the Non-Bank Claims before any payment or

2800755.10
2805086.2

distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims,

Guarantee Claims or LBO Debt.

### COUNT THREE

### ACTUAL FRAUD IN CONNECTION WITH STEP TWO AGAINST JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE SENIOR LENDER CLASS, THE BRIDGE LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS, THE STEP TWO LBO FEE DEFENDANTS AND THE LBO LENDER DISGORGEMENT DEFENDANTS TO AVOID STEP TWO NOTES, STEP TWO GUARANTEES, STEP TWO EQUITY VALUE TRANSFERS, STEP TWO REPAYMENTS AND STEP TWO LBO FEES AND TO RECOVER THE STEP TWO EQUITY VALUE TRANSFERS, STEP TWO REPAYMENTS AND STEP TWO LBO FEES (11 U.S.C. §§ 544(b), 548(a)(1)(A), 550(a) and 551)

143.  Plaintiff incorporates by reference paragraphs 1 – 142 of this Complaint as

if set forth again in full.

144.  The Debtors executed the Step Two Notes in connection with the Step Two

Financing, executed the Step Two Guarantee, made the Step Two Equity Value

Transfers, made the Step Two Repayments and paid LBO Fees in connection with Step

Two (the "Step Two LBO Fees") to certain of the LBO Fee Defendants (the "Step Two

LBO Fee Defendants"), all with actual intent to hinder, delay or defraud the holders of

the Bond Debt.

145.  Such actual intent to hinder, delay, or defraud is evidenced by the facts and

circumstances set forth in detail above, including:

  •  Misrepresentations by Company management to VRC that Morgan
     Stanley had agreed that the Company would be able to refinance
     the LBO Debt in 2014, when Morgan Stanley had not so agreed;

49

- Actions by Company management to ensure that VRC would issue a favorable Step Two solvency opinion, including increasing the Company's projected long-term growth rate more than four times, without justification, in October 2007, in the face of consistent underperformance by the Company relative to projections; instructing VRC to change its methodological approach to the long-term growth rate; and instructing VRC to use a definition of "fair market value" that was contrary to well-established valuation principles, all changes that VRC accepted uncritically.

- Actions and knowledge of the Lead Banks at and around the completion of the LBO, including developing but not acting upon internal analyses showing likely insolvency of the Company as a result of Step Two, and hiring a solvency firm to counsel the LBO Lenders on issues concerning the Company's solvency, but purposefully instructing the solvency firm not to offer a view as to whether the Company was solvent at or before Step Two.

146.  The Step Two Repayments were made pursuant to the avoidable Step Two Notes and at a time when the Debtors were or became insolvent, were left with unreasonably small capital or intended to incur or believed they would incur debts beyond the Debtors' ability to pay as a result of such Step Two Repayments.  The Step Two Repayments must therefore be avoided and Plaintiff is therefore entitled to recover the Step Two Repayments.

50

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants: (i) the Step Two Notes, Step Two Guarantees, Step Two Equity Value Transfers, Step Two Repayments and Step Two LBO Fees must be avoided pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(A); (ii) the Bank Claims and Guarantee Claims must be subordinated or disallowed to the extent based on the Step Two Debt or Step Two Guarantees; (iii) the Committee must recover the total amount of the Step Two Repayments and Step Two LBO Fees, together with interest from the date of each particular transfer, attorneys' fees and costs of suit and collection allowable by law, for the benefit of the estate from JPMCB and MLCC as the initial transferees or as the entities for whose benefit the transfers were made, and from the LBO Lender Disgorgement Defendants and the LBO Fee Defendants; (iv) the avoided Step Two Equity Value Transfers (or their value) must be recovered and preserved for the benefit of the Company's estate pursuant to 11 U.S.C. §§ 550(a) and 551; and (v) any benefits or proceeds of the avoided obligations, avoided and recovered transfers, disallowed claims and/or preserved value resulting from the foregoing must not be shared with JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt for the reasons given and based on the allegations made in Counts Four and Five, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or

2800755.10
2805086.2

distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims,

Guarantee Claims or LBO Debt.

### COUNT FOUR

### ESTOPPEL AGAINST JPMCB AND MLCC, AS AGENTS AND INDIVIDUALLY, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE SENIOR LENDER CLASS, THE BRIDGE LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS, THE LBO FEE DEFENDANTS AND THE LBO LENDER DISGORGEMENT DEFENDANTS TO PREVENT LBO LENDERS FROM BENEFITING FROM THE AVOIDANCE OF STEP TWO OBLIGATIONS AND TRANSFERS (11 U.S.C. § 551)

147.  Plaintiff incorporates by reference paragraphs 1 – 146 of this Complaint as
if set forth again in full.

148.  Step One and Step Two of the LBO were simultaneously planned,
structured, and approved.  The LBO Lenders received enhanced pricing with respect to
Step One based on the knowledge that Step Two would occur.

149.  The LBO Lenders that participated in Step One were the same creditors (or
their successors) that participated in, funded, or made possible Step Two.  The Step One
and Step Two LBO Lenders that were parties to the LBO Agreements entered into a
contractual loss-sharing arrangement in connection with the LBO.

150.  The Step One Lenders underwrote the Step One Financing with the explicit
expectation that Step Two would occur, and hence consented to, participated in, or
acquiesced in Step Two of the LBO.

151.  The Step One Lenders, in structuring the two-step LBO, knowingly and
intentionally assumed the risk that the Debtors would not be able to repay the LBO Debt
and would be rendered insolvent by the LBO.

2800755.10
2805086.2

152.  Having consented to, participated in, or acquiesced in Step Two, and/or having assumed the risk that Step Two would render the Debtors insolvent, the Step One Lenders are estopped from seeking the avoidance of Step Two or from benefiting from another party's avoidance of Step Two by sharing in any value resulting from avoidance.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count: (i) the Bank Claims, Guarantee Claims and LBO Debt, to the extent arising from the LBO Obligations, must be subordinated to the Non-Bank Claims or disallowed and, consequently, as to each Debtor, any value that results from such subordination must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt; (ii) the avoided and recovered Equity Value Transfers must be preserved for the benefit of the Company's estate pursuant to 11 U.S.C. § 551; and (iii) following or in addition to the avoidance and recovery of the LBO Obligations and the Equity Value Transfers and/or the subordination or disallowance of the Guarantee Claims (to the extent such claims arise from the LBO Guarantees or the Pledge) and/or the recovery by the Committee of the LBO Repayments and the LBO Fees, together with interest from the date of each particular LBO Repayment, attorneys' fees and costs of suit and collection allowable by law, as set forth in Counts One, Two and/or Three above, the Step One Lenders (or their successors and assigns) that consented to, participated in, acquiesced in or assumed the risk of Step Two must be estopped or prevented, as to each Debtor, from sharing in any recovery of the avoided Equity Value Transfers (or their value), the LBO Repayments, the LBO Fees or the avoided, subordinated or disallowed LBO Guarantees or Pledge (or their value), or from

53

sharing in any enhanced value that results or that becomes available in the apposite

Debtor's estate as a consequence of the avoidance of any of the foregoing obligations,

until all of the Non-Bank Claims against the Company have been paid in full and,

consequently, as to each Debtor, any value that results from such avoidance,

disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank

Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or

any holder of Bank Claims, Guarantee Claims or LBO Debt.

**<u>COUNT FIVE</u>**

**<u>ESTOPPEL AGAINST JPMCB AND MLCC, AS AGENTS AND
INDIVIDUALLY, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE
SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE
SENIOR LENDER CLASS, THE BRIDGE LENDER DEFENDANTS,
INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS, THE
LBO FEE DEFENDANTS AND THE LBO LENDER DISGORGEMENT
DEFENDANTS TO PREVENT LBO LENDERS FROM BENEFITING FROM
THE AVOIDANCE AND RECOVERY OF STEP TWO INTENTIONAL
FRAUDULENT TRANSFERS (11 U.S.C. § 551)</u>**

153.  Plaintiff incorporates by reference paragraphs 1 – 152 of this Complaint as

if set forth again in full.

154.  The Step Two Notes, Step Two Guarantees, Step Two Equity Value

Transfers, and Step Two Repayments constituted intentionally fraudulent obligations or

transfers.

155.  As to each Debtor, the Step One Lenders (or their successors) that

participated in Step Two are estopped from asserting their claims against the assets (or

their value) that are subject to avoidance and recovery as intentional fraudulent transfers,

or against the enhanced value that results from the avoidance as intentional fraudulent

transfers of the Step Two Notes, Step Two Guarantees, Step Two Equity Value Transfers,

2800755.10
2805086.2

the Step Two Repayments and the Step Two LBO Fees with respect to such Debtor, and equity impresses a lien on such returned property or enhanced value, as applicable, in favor of creditors that did not participate in the intentionally fraudulent transfers.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count: (i) the Bank Claims, Guarantee Claims and LBO Debt, to the extent arising from the LBO Obligations, must be subordinated to the Non-Bank Claims or disallowed and, consequently, as to each Debtor, any value that results from such subordination or disallowance must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt; (ii) the avoided and recovered Equity Value Transfers must be preserved for the benefit of the Company's estate pursuant to 11 U.S.C. § 551; and (iii) following or in addition to the avoidance and recovery of the LBO Obligations and the Equity Value Transfers and/or the subordination or disallowance of the Guarantee Claims (to the extent such claims arise from the LBO Guarantees or the Pledge) and/or the recovery by the Committee of the LBO Repayments and LBO Fees, together with interest from the date of each particular Repayment, attorneys' fees and costs of suit and collection allowable by law, as set forth in Counts One, Two and/or Three above, the Step One Lenders (or their successors) that participated in Step Two must be estopped or prevented, as to each Debtor, from sharing in any recovery of the avoided Equity Value Transfers (or their value), the LBO Repayments, the LBO Fees or the avoided or disallowed LBO Guarantees or Pledge (or their value), or from sharing in any enhanced value that results or that becomes available in the apposite Debtor's estate as a consequence of the avoidance of any of the foregoing

2800755.10
2805086.2

obligations, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

## COUNT SIX

### CONSTRUCTIVE FRAUD AGAINST JPMCB AND MLCC, AS AGENTS AND INDIVIDUALLY, WELLS FARGO, AS AGENT, AND THE LBO FEE DEFENDANTS TO AVOID AND RECOVER PAYMENT OF LBO FEES (11 U.S.C. §§ 544(b), 548(a)(1)(B) and 550(a))

156.  Plaintiff incorporates by reference paragraphs 1 – 155 of this Complaint as if set forth again in full.

157.  In connection with the LBO, the Company transferred or caused to be transferred an interest of the Company in property to the LBO Fee Defendants or to parties acting on their behalf consisting of the LBO Fees.

158.  The Company did not receive reasonably equivalent value in exchange for payment of the LBO Fees.

159.  At the time of payment of the LBO Fees, taking into consideration the LBO as a whole, the Company's obligations under the Merger Agreement and otherwise to complete the LBO, reasonable projections of the performance of the Company's businesses and the fair value of its assets and liabilities, the Company was insolvent within the meaning of 11 U.S.C. § 101(32)(A).

160.  The Company was left with unreasonably small capital to operate its business following payment of the LBO Fees.

2800755.10
2805086.2

161.  At the time of the transfer of the LBO Fees, the Company intended to incur or believed it would incur debts beyond its ability to pay as such debts matured.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants: (i) the transfers of the LBO Fees must be avoided pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B); (ii) the Committee shall recover the total amount of the LBO Fees pursuant to 11 U.S.C. §§ 544(b) and 550(a) for the benefit of the estates from JPMCB and MLCC, as the initial transferees or as the entities for whose benefit the transfers were made, and from the LBO Fee Defendants, together with interest from the date of the transfer, attorneys' fees and costs of suit and collection allowable by law; and (iii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

57

## COUNT SEVEN

### UNJUST ENRICHMENT AGAINST JPMCB AND MLCC, AS AGENTS AND INDIVIDUALLY, WELLS FARGO, AS AGENT, AND THE LBO LENDER DISGORGEMENT DEFENDANTS TO RECOVER LBO REPAYMENTS, AND AGAINST THE LBO FEE DEFENDANTS TO RECOVER THE LBO FEES

162.  Plaintiff incorporates by reference paragraphs 1 – 161 of this Complaint as if set forth again in full.

163.  Between the closing of the Step One Financing and the Petition Date, the Debtors made the Step One Repayments totaling approximately $1,730,320,761 in principal and interest to JPMCB as administrative agent for the Senior Credit Facility on account of the Step One Notes.

164.  Between the closing of the Step Two Financing and the Petition Date, the Debtors made payments totaling approximately $143,452,540 in principal and interest to JPMCB as administrative agent for the Senior Credit Facility on account of the Step Two Notes relating to the Incremental Facility (the "Incremental Repayments").

165.  Between the closing of the Step Two Financing and the Petition Date, the Debtors made payments totaling approximately $114,529,555 in interest to MLCC as administrative agent for the Bridge Facility on account of the Step Two Notes relating to the Bridge Facility (the "Bridge Repayments").

166.  The Step One Repayments, Bridge Repayments, and Incremental Repayments collectively constitute the LBO Repayments.

167.  In connection with the LBO Financing, the Company paid the LBO Fees to JPMCB and MLCC, as the initial transferees or as the entities for whose benefit the transfers were made, and/or the LBO Fee defendants.

58

168.  The LBO Obligations should be avoided as alleged above.

169.  It would be unjust and inequitable under the circumstances of the fraudulent conveyances alleged herein, including the knowledge, intent, and conduct of JPMCB and MLCC, to allow JPMCB, MLCC and Wells Fargo as administrative agents for the LBO Financing, the LBO Lender Disgorgement Defendants or the LBO Fee Defendants to retain the LBO Repayments or the LBO Fees.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants (i) to the extent that the LBO Obligations are avoided, the Committee shall recover (a) the amount of the Step One and Incremental Repayments from JPMCB and the amount of the Bridge Repayments from MLCC, as administrative agents respectively, and as the initial transferees or as the entities for whose benefit the transfers were made, respectively, (b) the LBO Repayments from the LBO Lender Disgorgement Defendants that received them; and (c) the LBO Fees from JPMCB and MLCC, as the initial transferees or as the entities for whose benefit the transfers were made, and the LBO Fee Defendants, together with interest from the date of each particular transfer, attorneys' fees and costs of suit and collection allowable by law; and (ii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that

2800755.10
2805086.2

results from such avoidance, disallowance and/or recovery must be paid or distributed to

the holders of the Non-Bank Claims before any payment or distribution is made to

JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO

Debt.

<u>**COUNT EIGHT**</u>

<u>**UNJUST ENRICHMENT AGAINST JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, WELLS FARGO, AS AGENT, THE LBO LENDERS, THE SENIOR LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE SENIOR LENDER CLASS, AND THE BRIDGE LENDER DEFENDANTS, INDIVIDUALLY AND ON BEHALF OF THE BRIDGE LENDER CLASS TO PREVENT WINDFALL FROM AVOIDANCE OF STEP TWO OBLIGATIONS, STEP TWO REPAYMENTS AND STEP TWO LBO FEES**</u>

170.  Plaintiff incorporates by reference paragraphs 1 – 169 of this Complaint as

if set forth again in full.

171.  The Step Two Notes, the Step Two Guarantee and the Subordination

Agreements (together, the "<u>Step Two Obligations</u>") should be avoided.

172.  The Step Two Repayments and Step Two LBO Fees should be avoided and

recovered.

173.  The Lead Banks, including JPMCB and MLCC, arranged or participated

both in Step One and in Step Two and were parties to the Loan Commitment Letters,

which enabled the Company to undertake the LBO.

174.  Absent the relief requested, JPMCB and MLCC, individually and as agents,

Wells Fargo, as agent, and the LBO Lenders will receive a greater distribution in the

chapter 11 cases if the Step Two Obligations, the Step Two Repayments, and Step Two

LBO Fees are avoided and recovered.

2800755.10
2805086.2

175.  Absent the relief requested, the Non-Bank Claims will not receive a materially greater distribution in the chapter 11 cases if the Step Two Obligations, the Step Two Repayments, and Step Two LBO Fees are avoided and recovered.

176.  It would be unjust and inequitable under the circumstances of the fraudulent conveyances alleged herein, including the knowledge, intent, and conduct of the Lead Banks, to allow JPMCB and MLCC, individually and as agents, Wells Fargo, as agent, and the LBO Lenders to receive any benefit as a result of the avoidance of the Step Two Obligations, the Step Two Repayments, and Step Two LBO Fees.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count (i) to the extent that the Step Two Obligations, Step Two Repayments and Step Two LBO Fees are avoided and the Step Two Repayments and Step Two LBO Fees are recovered, the Committee shall recover the amount of the resulting benefits to the LBO Lenders from JPMCB, as administrative agent for the Senior Credit Facility and as the initial transferee or as the entity for whose benefit the transfers were made, MLCC, as administrative agent for the Bridge Facility and as the initial transferee or as the entity for whose benefit the transfers were made, and Wells Fargo, as administrative agent for the Bridge Facility, and from the LBO Lender Disgorgement Defendants and LBO Fee Defendants; and (ii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such

61

avoidance, disallowance and/or recovery must be paid or distributed to the holders of the

Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells

Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

## COUNT NINE

## PREFERENCE AGAINST JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, WELLS FARGO, AS AGENT, AND THE LBO LENDER PREFERENCE DEFENDANTS TO AVOID AND RECOVER LBO PREFERENCES (11 U.S.C. §§ 547(b) and 550(a))

177.  Plaintiff incorporates by reference paragraphs 1 – 176 of this Complaint as if set forth again in full.

178.  On or within ninety (90) days preceding the Petition Date, the Debtors made transfers of an interest of the Debtors in property to JPMCB as administrative agent for the Senior Credit Facility totaling at least $140 million (the "Senior Preferences").

179.  On or within ninety (90) days preceding the Petition Date, the Debtors made a transfer of an interest of the Debtors in property to MLCC as administrative agent for the Bridge Facility totaling approximately $35,121,703 (the "Bridge Preference").

180.  JPMCB and MLCC paid portions of the Senior Preferences and the Bridge Preferences to those LBO Lender Disgorgement Defendants listed on Exhibit G (the "LBO Lender Preference Defendants").

181.  The Senior Preferences and Bridge Preference are referred to collectively as the "LBO Preferences."

182.  Each of the LBO Preferences were to or for the benefit of a creditor, for or on account of antecedent debt and made while the Debtors were insolvent.

62

183.  Each of the LBO Preferences enabled such creditors to receive more than such creditor would receive if the cases were under chapter 7 of the Bankruptcy Code, the transfers had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count: (i) the transfers comprising the LBO Preferences must be avoided pursuant to 11 U.S.C. § 547(b), and the Committee shall recover the total amount of the LBO Preferences pursuant to 11 U.S.C. § 550(a) for the benefit of the estates from JPMCB and MLCC, as administrative agents for the Senior Credit Facility and Bridge Facility, respectively, as the initial transferees, or as the entities for whose benefit the transfers were made, from Wells Fargo, as administrative agent for the Bridge Facility, and from the LBO Lender Preference Defendants, together with interest from the date of each particular transfer, attorneys' fees and costs of suit and collection allowable by law; and (ii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt .

2800755.10
2805086.2

## COUNT TEN

## EQUITABLE SUBORDINATION AND DISALLOWANCE AGAINST ALL DEFENDANTS

184.  Plaintiff incorporates by reference paragraphs 1 – 183 of this Complaint as if set forth again in full.

185.  The defendants engaged in a pattern of egregious misconduct to enrich themselves at the expense of the Debtors and the holders of the Non-Bank Debt by advising and supporting the Debtors' entry into the LBO in the first place and Debtors' incurrence of debt well beyond their means to repay it given the circumstances at the time.

186.  The defendants developed and caused the Debtors to implement a scheme that effectively elevated the priority of the 2006 Bank Debt over that of the Bond Debt and expanded the size of the first-priority debt so that the Bond Debt and the other debt of the Company would not be repaid in the event of the Debtors' subsequent failure and insolvency.

187.  As detailed above, the defendants were aware prior to the closing of the Step One Financing that there was a high risk that the Debtors would not be able to repay the LBO Debt and would be rendered insolvent by the LBO.

188.  As detailed above, the defendants were also aware prior to the closing of the Step Two Financing that there was a high risk that the Debtors would not be able to repay the LBO Debt and would be rendered insolvent by the LBO, and the defendants engaged in fraudulent conduct in connection with Step Two.

2800755.10
2805086.2

189.  By obtaining the LBO Guarantees from the Guarantors, the defendants were able to ensure that the first losses from any bankruptcy would fall primarily on the holders of the Bond Debt and other debt of the Company.  The defendants took further steps to hinder recoveries by such creditors, including the creation of Holdco and Finance and the transactions relating to those entities that sought to divert value away from the rights of such creditors.

190.  Merrill and CGMI, acted as advisors to the Company with respect to the auction and the LBO and, as a result, had access to inside information and were able to exercise influence over the directors and officers.  The relationship between Merrill, CGMI, and the Company was not at arm's length.

191.  The defendants earned millions of dollars in fees for providing the financing and to increase the interest rates on, and improve their security with respect to, the 2006 Bank Debt.

192.  The misconduct of the defendants described herein was inequitable and resulted in injury to the holders of the Non-Bank Debt by depriving them of the equity in the Guarantors that existed prior to the LBO as a source of repayment of their debt.

193.  The defendants who participated in both the Step One and Step Two Financing should not profit from their inequitable conduct and wrongdoing at Step Two. Accordingly, all claims of such defendants to obtain the benefits of avoided Step Two obligations or transfers should be disallowed or equitably subordinated to the claims of Non-Bank Lenders.

2800755.10
2805086.2

194.  Equitable subordination and disallowance of the claims of the defendants is consistent with the provisions of the Bankruptcy Code.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count: (i) the Bank Claims must be equitably subordinated to the Non-Bank Claims or disallowed, and the LBO Guarantee Claims must be equitably subordinated or disallowed; and (ii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

**COUNT ELEVEN**

**CONSTRUCTIVE FRAUD AGAINST CITICORP AS AGENT, THE 2006 BANK DEBT LENDERS, JPMCB AND MLCC, INDIVIDUALLY AND AS AGENTS, AND WELLS FARGO, AS AGENT, TO AVOID AND RECOVER REPAYMENT OF 2006 BANK DEBT (11 U.S.C. §§ 544(b), 548(a)(1)(B), § 550(a) and 551)**

195.  Plaintiff incorporates by reference paragraphs 1 – 194 of this Complaint as if set forth again in full.

196.  At the time of the closing of the Step One Financing, the Company made the 2006 Repayment to Citicorp as administrative agent for the 2006 Bank Debt to satisfy that debt in full.

66

197.  CGMI, part of Citigroup, acted as an advisor to the Company with respect to the auction and the LBO and, as a result, had access to inside information.  It also earned millions of dollars in fees for providing the LBO Financing.

198.  Citicorp, as part of Citigroup, knew or should have known that the Debtors were incurring debt as a result of the LBO beyond the Debtors' means to repay, given the declining newspaper business.

199.  By obtaining the payoff of the 2006 Bank Debt and participating in the LBO Debt, Citicorp was able to increase the interest rate and improve the security with respect to the money it and others had loaned to the Company.

200.  The Company did not receive fair consideration in exchange for the 2006 Repayment.

201.  At the time of the closing of the Step One Financing, taking into consideration the LBO as a whole, the Company's obligations under the Merger Agreement and otherwise to complete the LBO, reasonable projections of the performance of the Company's businesses and the fair value of its assets and liabilities, the Debtors were insolvent.

202.  The Company was left with unreasonably small capital to operate its business as a result of and following the closing of the Step One Financing.

203.  At the time of the closing of the Step One Financing, the Company intended to incur or believed it would incur debts beyond the Company's ability to pay as such debts matured.

2800755.10
2805086.2

204.  At all times since the closing of the Step One Financing, actual creditors of the Company remained creditors of the Company and continued to remain creditors as of the Petition Date.

WHEREFORE, the Committee seeks the following relief against all defendants named in this Count except where particular defendants are identified with respect to certain elements of relief in which circumstances relief is sought with respect to the particularly identified defendants: (i) the transfer comprising the repayment of the 2006 Bank Debt must be avoided, and the Committee shall recover the total amount of the repayment pursuant to 11 U.S.C. § 550(a) for the benefit of the estate from Citigroup as administrative agent for the 2006 Bank Debt and as the initial transferee, and from the 2006 Bank Debt Defendants, together with interest from the date of each particular transfer, attorneys' fees and costs of suit and collection allowable by law; and (ii) for the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

2800755.10
2805086.2

## COUNT TWELVE

## CLAIM DISALLOWANCE AGAINST ALL DEFENDANTS

205.  Plaintiff incorporates by reference paragraphs 1 - 204 of this Complaint as if set forth again in full.

206.  Plaintiff has brought numerous causes of action, enumerated above, against the defendants seeking to avoid the LBO Obligations.

207.  To the extent that Plaintiff is ultimately successful in avoiding any of the LBO Obligations, Plaintiff is entitled to judgment disallowing any claim held by the defendants pursuant to 11 U.S.C. § 502(d), pending payment or turnover of the avoided property.  For the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

## COUNT THIRTEEN

## AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES AGAINST JPMCB, MLCC, CITIGROUP AND BANK OF AMERICA

208.  Plaintiff incorporates by reference paragraphs 1 - 207 of this Complaint as if set forth again in full.

69

209.  The officers of Tribune at the time of the LBO Transaction, including Messrs. Gerenesko and Bigelow, owed the Company and its stockholders a fiduciary duty of good faith, care and loyalty.

210.  The Company's management, including Messrs. Gerenesko and Bigelow, acting both individually and collectively, failed to exercise the necessary care, and breached their respective duties of good faith, care and loyalty by, among other things, (a) making unjustifiable assumptions for the Company's October 2007 financial projections and instructing VRC to use such unreliable projections, which VRC did uncritically; (b) instructing VRC to make unjustifiable and unreasonable assumptions in connection with its Step Two solvency opinion, which VRC agreed to do; (c) representing to VRC that Morgan Stanley agreed with the Company's assumptions concerning refinancing of the LBO when Morgan Stanley had not so agreed; (d) representing to VRC that the Company would be solvent after giving effect to Step Two without a reasonable basis for such representation; (e) failing to advise the Board that management had represented to VRC that Morgan Stanley agreed with the Company's assumptions concerning refinancing of the LBO Debt when Morgan Stanley had not so agreed; and (f) agreeing to, approving and/or facilitating the imprudent and highly leveraged LBO Transaction that rendered the Company insolvent knowingly, grossly negligently and/or willfully blindly disregarding the foreseeable disastrous consequences of the LBO Transaction.

211.  JPMCB, MLCC, Citigroup, and Bank of America  knew that the Company's officers had the fiduciary duties alleged herein.

70

212.  JPMCB, MLCC, Citigroup, and Bank of America aided and abetted Company management's breaches of fiduciary duties, and were active and knowing participants in those breaches of fiduciary duties by, among other things, proceeding to close the Step Two Financing while knowing or being willfully blind to the facts that: (a) the October 2007 financial projections and VRC's Step Two solvency were unreliable, (b) the assumption that the Company could refinance the LBO Debt was unjustifiable; and (c) the LBO would or was highly likely to render the Company insolvent.

213.  The Company has been substantially damaged as a direct and proximate result of Morgan Stanley's, JPMCB's, MLCC's, Citigroup's, and Bank of America's aiding and abetting the breaches of fiduciary duties set forth herein.

WHEREFORE, Plaintiff demands judgment against JPMCB, MLCC, Citigroup, and Bank of America for compensatory damages in an amount to be proved at trial, costs and such other and further relief as the Court may deem just and proper.  For the reasons given and based on the allegations made in Counts Four and Five, none of the recoveries or enhanced value that results from the successful prosecution of this Count shall be shared with or paid to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims or LBO Debt, until all of the Non-Bank Claims against the Company have been paid in full and, consequently, as to each Debtor, any value that results from such avoidance, disallowance and/or recovery must be paid or distributed to the holders of the Non-Bank Claims before any payment or distribution is made to JPMCB, MLCC, Wells Fargo or any holder of Bank Claims, Guarantee Claims or LBO Debt.

2800755.10
2805086.2

## **RESERVATION OF RIGHTS**

214.  The Committee reserves the right, to the extent permitted under the

Bankruptcy Code or by agreement, to assert any claims relating to the subject matter of

this action or otherwise relating to the Debtors and their estates against any third party.


Dated:  November 1, 2010                    ZUCKERMAN SPAEDER LLP


                                            _____/s/ Thomas G. Macauley_____
                                            Thomas G. Macauley (ID No. 3411)
                                            919 Market Street, Suite 990
                                            Wilmington, DE  19801
                                            Telephone:  (302) 427-0400
                                            Facsimile:  (302) 427-8242

                                            Graeme W. Bush, Esquire
                                            James Sottile, Esquire
                                            Andrew N. Goldfarb, Esquire
                                            1800 M Street, N.W., Suite 1000
                                            Washington, DC  20036
                                            Telephone:  (202) 778-1800
                                            Facsimile:  (202) 822-8106

                                            Special Counsel to the Official Committee
                                            of Unsecured Creditors

2800755.10
2805086.2